# EXHIBIT "B"

# MANAGEMENT AGREEMENT

THIS MANAGEMENT AGREEMENT (this "Agreement"), dated as of March 1, 2016 (the "Commencement Date"), by and between Simple Venue, LLC, a New York limited liability company, with offices at 621 West 46th Street, New York, NY 10036 (hereinafter referred to as "Manager"), and Madison Square Tavern Inc., a New York corporation, with offices at 150 West 30th Street, New York, NY 10001 (hereinafter referred to as "Owner").

## RECITALS

WHEREAS, Owner is the owner of the restaurant located at 150 West 30th Street, New York, NY 10001 and commonly known as Madison Square Tavern (the "Restaurant"), and is the tenant of the premises at which the Restaurant is located; and

WHEREAS, Owner and Manager desire to evidence their agreement with respect to the operation and management of the Restaurant as more particularly set forth below.

NOW THEREFORE, in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and with the intent to be legally bound hereby, Owner and Manager agree as follows:

1. **Use/Name.** During the term of this Agreement, Manager shall be the exclusive operator and manager of the Restaurant. Manager shall operate the Restaurant for the sale of food, beverages (alcoholic and non-alcoholic), food products and related services. Manager shall select the name of the Restaurant in its discretion from time to time. In the event Owner files a Chapter 11 petition, which is its present intention, this Agreement shall then become subject to Bankruptcy Court approval and Owner shall promptly move to obtain such approval and fully support the Agreement.

2. **Term.** The Initial Term of this Agreement shall commence on the Commencement Date and continue until the sixth (6th) month anniversary of the Commencement Date (the "Initial Term"), unless earlier terminated pursuant to Section 5 herein. Thereafter, unless terminated pursuant to Section 5 herein, this Agreement shall be renewed automatically for additional successive periods of six (6) months (each a "Renewal Term," and collectively with the Initial Term, the "Term"), provided that the Restaurant has average Total Weekly Sales of forty-thousand dollars ($40,000.00) for the twenty-six weeks leading up to the Renewal Term. As used herein, the term "Total Weekly Sales" shall mean all income and revenues of every kind collected from or in connection with the operation of the Restaurant, exclusive of (i) any gratuities paid for services which are remitted to waiters or other Restaurant Personnel, (ii) federal, state, city or other excise, sales and use taxes, and (iii) comps.

3. **Scope of Services.** All of the services of Manager hereunder will be performed by management personnel selected and engaged by Manager in Manager's sole discretion ("Management Personnel"), or the Restaurant Personnel (as hereinafter defined), under the direct

1

supervision of Management Personnel. Manager shall:

      a.    manage and operate the Restaurant and shall devote such time, attention and energies to the business of the Restaurant, as determined by Manager: (i) to operate the Restaurant, and (ii) to maintain the Restaurant and all of its facilities in accordance with industry standards of similarly situated restaurants. Manager shall keep the Restaurant open for business and adequately staffed during the hours that Manager determines the Restaurant shall be in operation.

      b.    have the right to make all decisions relating to the operation and management of the Restaurant, including all decisions relating to Restaurant menu policies, advertising and marketing of the Restaurant, pricing policies, restaurant decor, design and aesthetics, including all alterations in and to the Restaurant and the design of items of personal property used in the Restaurant (such as the menu, china, and silverware). In furtherance of the foregoing rights, Manager shall have the sole and exclusive right, on behalf of the Owner, to: (i) arrange for the preparation and service of food and beverages for the Restaurant in such quantities and at such prices as determined by Manager; (ii) provide general marketing, subject to Manager's submission to Owner of a marketing proposal and Owner's approval thereof, but all costs related to marketing shall be paid by Owner; (iii) as necessary from time to time, modify the marketing concepts for the Restaurant; (iv) in accordance with the provisions of Section 14 hereof, recruit, hire, train, supervise, direct, discipline and terminate all restaurant personnel including, without limitation, managers, chefs, cooks, waiters, kitchen help, porters, cashiers and all other persons necessary for the efficient operation of the Restaurant (the "Restaurant Personnel"); (v) operate the Restaurant and determine sources of supply for products meeting the appropriate standards and at acceptable prices; (vi) purchase and arrange for the delivery to the Restaurant of food, beverages and supplies; (vii) rent equipment as necessary for the food and beverage operation of the Restaurant in the ordinary course of business or with Bankruptcy Court approval; (viii) establish policies, standards and procedures for the operations conducted at the Restaurant; (ix) provide general and executive supervision of, and administrative support for, the Restaurant; (x) deposit all revenues from the Restaurant, on a daily basis, into bank accounts maintained in the name of Owner as a Debtor-In-Possession account, but for which Manager or its representatives shall have cosigning authority subject to verification by the Owner as Debtor-In-Possession ("Bank Accounts"); (xi) pay all post-bankruptcy expenses, costs, fees and expenditures of the Restaurant, including all fees due pursuant hereto, from the Bank Accounts or otherwise; (xii) maintain the books and records with respect to the operations of the Restaurant (this does not include provision of quarterly CPA services which are an additional approximately $2,500 per quarter to be retained by Owner); (xiii) provide safe reconciling (Owner is responsible for related bank fees); (xiv) provide reception and event planning, subject to Manager's customary commissions (Owner is responsible for cost of providing host/hostess at receptions and events); (xv) provide weekly operations consultations; and (xvi) provide general social media postings, but any boosted posts and paid marketing shall be paid by Owner. In no event shall the Manager be responsible or liable for expenses or liabilities of the Owner or the Restaurant.

    4.    <u>Management Fee</u>.

2

a. In consideration of the services rendered by Manager as set forth above, Owner agrees to pay Manager, during each calendar week, commencing from the date of this Agreement and continuing throughout the Term of this Agreement, an amount equal to six percent (6%) of weekly Adjusted Gross Sales through the date of termination of this Agreement (the "Management Fee"). The Management Fee shall be paid no later than one (1) day after the end of each calendar week.

b. Owner acknowledges that Manager and certain of its affiliates engage in party promotion and event planning, and may continue to do so for third parties and at other venues, and have no obligation to engage in such activities for the Restaurant. Notwithstanding the foregoing, in the event Manager or its affiliates act as promoter for a party or event, or plan an event, at the Restaurant, Manager or its affiliate, as applicable, shall be entitled to a promoter fee or event planning fee equal to the Manager's customary fees for providing such services.

c. In the event Manager procures sponsorship placements for the Restaurant, Owner shall pay Manager an additional twenty percent (20%) commission of the amount of the sponsorship.

d. As used herein, the term "Adjusted Gross Sales" shall mean all income and revenues of every kind collected from or in connection with the operation of the Restaurant, exclusive of (i) any gratuities paid for services which are remitted to waiters or other Restaurant Personnel, (ii) federal, state, city or other excise, sales and use taxes, (iii) comps, and (iv) promoter fees actually paid.

5. Termination of Agreement.

a. This Agreement may be terminated by Manager at any time prior to the expiration of the Initial Term or any Renewal Term upon thirty (30) days prior written notice to Owner in the event that Owner has materially breached this Agreement and not cured such breach within such thirty (30) day period after written notice has been provided by Manager.

b. This Agreement may be terminated by Owner at any time prior to the expiration of the Initial Term or any Renewal Term: (i) upon thirty (30) days prior written notice to Manager in the event that Manager is in material breach of its duties and obligations hereunder and fails to cure such breach within such thirty (30) day period after written notice has been provided by Owner.

c. This Agreement may be terminated by Manager immediately upon the termination of the lease for the premises at which the Restaurant is located (the "Lease").

d. During the Term, Owner may not permit the transfer of a controlling interest in the equity of Owner or sell the assets of Owner, including the Restaurant, without Manager's prior written consent, such consent not to be unreasonably withheld or delayed. In the event Owner does transfer a controlling interest in the equity of Owner, this Agreement

remains in full force and effect and is automatically renewed for a new six (6) month term.

6. <u>Licenses and Permits</u>. Owner shall apply for and maintain all permits and licenses (including but not limited to a liquor license) as may be necessary or appropriate for the operation of the Restaurant. Manager agrees, upon request of Owner, to promptly sign any and all applications for any and all such licenses, permits or other instruments necessary or appropriate for operation of the Restaurant, provided same are reasonably acceptable to Manager. Should Manager obtain any necessary license or permit, Owner agrees, at its cost and expense, upon request of Manager, to promptly sign any and all applications for any and all such licenses, permits or other instruments necessary or appropriate for operation of the Restaurant, provided same are reasonably acceptable to Owner. Upon the termination of this Agreement, all permits and licenses associated with the Restaurant will remain the property of Owner, including, but not limited to, any liquor license. Manager agrees to transfer any permits or licenses, in its name, to Owner, upon the termination of this Agreement.

7. <u>Termination Transition</u>. In the event of the termination of this Agreement, Owner and Manager shall exercise reasonable efforts to ensure a reasonably orderly transition of all operations with respect to the Restaurant to the new manager, including but not limited to taking such steps as may be necessary to remove Manager from current licenses and transfer said licenses to the new manager. At the request of Owner, Manager shall deliver all original books and records in Manager's possession pertaining to the operation of the Restaurant to Owner. Owner shall promptly make all payments due and owing to Manager under this Agreement, after the final accounting is completed.

8. <u>Ownership of Restaurant and Trademark</u>. Manager and Owner acknowledge that Owner is the owner of the Restaurant and the business related thereto.

9. <u>No Liens</u>. Owner shall use its best commercial efforts to prevent any additional liens from being filed against the Restaurant, Owner or the premises at which the Restaurant is located and Manager acknowledges the existence of prior bank and financing liens and various mechanic's liens which shall be addressed by Owner in Chapter 11.

10. <u>Accounting, Books and Records</u>.

    a. Consistent with operating guidelines in bankruptcy, Manager shall establish and implement for the Restaurant the accounting, inventory and cost control systems necessary for the operation and maintenance of the Restaurant.

    b. Manager's accounting department shall provide all payroll, bookkeeping, accounting and clerical services, including the maintenance of payroll records, incident to the operation and maintenance of the Restaurant.

    c. Manager shall maintain at its office complete books and records and supporting documentation of the business and operations of the Restaurant. Owner and its designees shall have complete and free access to the books and records pertaining solely to the

4

Restaurant, including without limitation the right at Owner's expense to audit and make copies of same, during customary business hours and upon reasonable prior notice.

11. <u>Indemnification</u>. Owner agrees to indemnify and hold Manager, its members, shareholders, employees, officers and directors, and their respective affiliates, employees and agents (collectively, the "<u>Indemnified Parties</u>") harmless from and against any and all claims, obligations, losses, liabilities, damages, expenses and costs (including court costs and reasonable fees of attorneys and expert witnesses) which result or arise out of the negligence or willful misconduct of Owner or its agents, employees or contractors; provided, however, that Owner shall not be required to indemnify the Manager with respect to claims arising out of the willful or grossly negligent acts or omissions of Manager or Manager's agents, employees or contractors.

12. <u>Insurance</u>.

   a. Owner shall, during the term of this Agreement, procure and maintain, all insurance (i) required of it in accordance with the Lease and (ii) in connection with the Restaurant at industry standard levels.

   b. Owner shall provide Manager with certificates evidencing the insurance coverage obtained pursuant to Section 12(a) hereof and Manager shall be included as an additional named insured on all such insurance policies and shall receive the same coverage provided to Owner. Owner shall annually provide Manager with certificates evidencing such insurance coverages.

   c. Throughout the term, Manager shall maintain: (i) workers' compensation insurance, unemployment insurance, and all other statutorily required insurance with respect to all of Manager's employees. Owner shall be named as an additional named insured on all policies carried by Manager pursuant to this Agreement. Manager shall annually provide Owner with certificates evidencing such insurance coverages.

   d. Both parties shall name the other party as an additional named insured on all liability insurance policies, to the extent permissible under applicable law and insurance regulations. Subject to the following conditions, each of Owner and Manager hereby releases the other with respect to any claim (including a claim for negligence) which it might otherwise have against the other party for loss, damage or destruction with respect to its property by fire or other casualty occurring during the term of this Agreement, to the extent of insurance proceeds received by the releasing party. The foregoing release shall be effective only to the extent same shall not invalidate a party's insurance coverage nor be prohibited under its insurance policy. Each party shall attempt to procure an appropriate clause in its property insurance policies pursuant to which the respective insurance companies waive subrogation or permit the insured, prior to any loss, to agree with a third party to waive any claim which it might have against said third party. If and to the extent that such waiver or permission can be obtained only by the payment of an additional charge then the party benefiting from the waiver or permission shall pay such charge upon demand or shall be deemed to have agreed that the party obtaining the insurance coverage in question shall be free of any further obligations under the provisions

5

hereof relating to such waiver or permission.

13. **Taxes**. Manager shall on behalf of Owner collect sales taxes as required by applicable law and Manager shall assist Owner in Owner's preparation of all sales tax returns and remission of payment of all sales taxes collected in connection with the operation of the Restaurant, provided that funds are available. Manager shall assist Owner in Owner's preparation of all payroll tax returns and remission of payment of all applicable payroll taxes and deductions with respect to Restaurant Personnel.

14. **Employment**. All Restaurant Personnel shall at all times during the Term of this Agreement be the employees of Owner. Manager shall have the authority and duty, on behalf of Owner, to recruit, hire, train, supervise, direct, discipline and terminate all Restaurant Personnel necessary for the operation of the Restaurant, including a general manager and manager. Manager acknowledges and agrees that Owner shall have the right to institute employment policies. Manager shall have the authority to terminate any Restaurant Personnel reasonably objectionable to Manager and shall terminate any Restaurant Personnel reasonably objectionable to Owner, subject to applicable law and the terms of any applicable collective bargaining agreement. Manager shall use its reasonable efforts to cause all such employees to conform to the reasonable policies, practices, systems and rules from time to time established by Manager and Owner in the operation of the business.

15. **Waiver**. The failure of either party to insist upon a strict performance of any of the terms or provisions of this Agreement or to exercise any option, right or remedy herein contained, shall not be construed as a waiver or as a relinquishment of any such term, provision, option, right or remedy, and the same shall continue and remain in full force and effect. No waiver by either party of any term or provision hereof shall be deemed to have been made unless expressed in writing and signed by such party.

16. **Assignment**. Neither party may assign or transfer, or permit the assignment or transfer of, this Agreement or any rights or obligations hereunder without the prior written consent of the other party.

17. **Right to Make Agreement**. Each party warrants, with respect to itself, that neither the execution of this Agreement nor the transactions contemplated hereby violate any provision of law or judgment, writ, injunction, order or decree of any court or governmental authority having jurisdiction over it; result in or constitute a breach or default under any indenture, contract, other commitment or restriction to which it is a party or by which it is bound; or require any consent, vote or approval which has not been taken. Each party covenants that it has and will continue to have throughout the Term of this Agreement, the full right to enter into this Agreement and perform its obligations hereunder.

18. **Applicable Law; Jurisdiction**. To the extent not subject to Bankruptcy Court jurisdiction, this Agreement shall be binding upon and shall inure to the benefit of the respective parties and their successors and permitted assigns and shall be governed by and interpreted in accordance with the laws of the State of New York applicable to contracts made and to be

performed therein (without regard to the conflicts of law rules thereof which might apply the laws of any other jurisdiction). The parties hereto each hereby irrevocably submit to the exclusive jurisdiction and venue of the State courts located in New York County, New York for the purposes of any suit, action or other proceeding arising out of or based upon this Agreement or the subject matter hereof after the Chapter 11 case is concluded.

19. Notices. All notices, requests, demands and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given (i) if personally delivered, when so delivered, (ii) if mailed by certified mail, return receipt requested, postage prepaid and addressed to the intended recipient, five (5) days after being so mailed, or (iii) if sent by a nationally recognized overnight delivery service which guarantees next day delivery, one (1) day after being so sent, to each party at its address as first set forth above and:

>If to Manager, with copy to:
>Law Office of Elana F. Sinensky, PLLC
>164 West 25th Street, Suite 6F
>New York, New York 10001
>
>If to Owner, with copy to:
>Goldberg Weprin Finkel Goldstein LLP
>1501 Broadway, 22nd Fl.
>New York, New York 10036
>Attn: Kevin J. Nash, Esq.

Any party may change the address to which notices, requests, demands, claims and other communications hereunder are to be delivered by giving the other parties notice in the manner herein set forth.

20. Entire Agreement. This Agreement contains the entire agreement of the parties with respect to the subject matter hereof and supersedes and replaces any prior agreement or understanding, and no amendment, modification or waiver of any provisions hereof shall be valid unless it is in writing and signed by the party or parties to be bound thereby.

21. Section and Other Headings. The section and other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

22. Relationship of the Parties. The parties agree that nothing contained herein is to be construed as making the parties joint venturers or partners, or as creating a franchisee-franchisor relationship.

23. Counterparts. This Agreement may be executed in one or more counterparts, any of which shall be deemed an original, and all of which together shall constitute one and the same instrument, notwithstanding that all of the parties are not signatory to the original or the same counterparts.

24. <u>Limitation on Liability</u>. EXCEPT AS EXPRESSLY SET FORTH HEREIN, ALL SERVICES PROVIDED BY MANAGER HEREUNDER ARE PROVIDED "AS IS" AND MANAGER MAKES NO, AND DISCLAIMS ALL, REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF FITNESS FOR PARTICULAR PURPOSES OR REQUIREMENTS OF MERCHANTABILITY, WITH RESPECT TO SUCH SERVICES OR WITH RESPECT TO THE PERFORMANCE OF THE RESTAURANT. Neither party shall be liable for indirect, consequential or punitive damages resulting from or arising out of this Agreement, including, but not limited to, loss of property, loss of profits, loss of products or business interruption.

IN WITNESS WHEREOF, the undersigned parties have duly executed this Agreement as of the day and year first above written.

MADISON SQUARE TAVERN INC.

By: _[signature]_
Name: Edward A Dobes
Title: President/Owner

SIMPLE VENUE LLC

By: _[signature]_
Name: Michael Simensky
Title: Mananging Member